Good morning. May it please the Court, Michael Tanaka appearing on behalf of Dominic Dorsey. I'm going to confine my argument to the issue of Detective Marston's opinion evidence. I'd like to reserve three or four minutes for rebuttal, and if the Court has any questions or any other issues, I'm of course happy to answer them. The full issue before this jury was who were the men depicted in those surveillance videos robbing the gas station and the bank. Here, the investigating officer short-circuited the jury's determination by offering his opinion on a number of occasions that those two men were the defendants, Dorsey and Bailey. None of this was admissible as the opinion evidence. On the points, there were a few times where he actually said it was, and in most, if not all, of those cases there was an immediate objection, and the judge sustained the objection and made an instruction. Were there points where he actually says it, and there's an objection, and she rejected that? There were, well, the first time he said it, there was an objection, and the judge said just refer to the man as the taller man, but then as it went on, the judge clearly indicated that she believed any time he expressed his belief, that was a proper part of the investigation, and thought that it would be handled solely by an admonition, and that would suffice. So he did express it a number of times. There was an objection in the sense that once counsel realized that the judge was not going to strike it or exclude it, he would have to deal, you know, his only remedy was the admonition, and went along with that. There was really no point in doing anything more than pointing it out and asking for the continuing admonition, but it did continue, and he did express his opinion numerous more times. So, for example, he said that, you know, the first incident was when he said that Dorsey was the one covering his face with the ski mask, and all the robberies, the robber would use the ski mask. So, clearly connecting Dorsey to all the robberies as the one with the ski mask. On that example, Judge Snyder very clearly said that that was improper, didn't she? She said, let's refer to him as the taller robber, and the government exceeded, and did that. Did she instruct the jury not to consider that, what he had said in that occasion? She said that his opinions were his opinions, and they were the arbiter of fact. But by repeating the opinions, and when he said that, was looking at the photos, and they looked at five photos from five robberies of the shoes the taller, now known as Dorsey, robber was wearing, and then he compared it to a photo of Dorsey, Dorsey's shoes, and said they were the same. The only conclusion, of course, was that Dorsey's the one that's robbing the stores. Now, that's a jury question. It wasn't for Detective Morrison to make that comparison. He had no expertise that the jury didn't have in comparing these photos of these shoes. Same thing with Bailey's. But the jury eventually had all of that information and more, and so in light of the instructions and all of the other evidence, why isn't it harmless error? Well, there's a number of reasons, Your Honor. First, this was obviously a closed case. The first jury heard all of that evidence and did not convict. In that case, in the first trial, Morrison did not make those comparisons. He simply narrated the videos. He didn't say who was wearing the sea mask. He didn't say that the shoes were the same, that Dorsey's shoes were the same, that Bailey's shoes were the same. So there were obviously, it was not a slam-dunk case. The government obviously had problems. There were no witness IDs. There was no DNA evidence. They didn't recover this distinctive cowboy gun. And perhaps most problematically, the witnesses regularly and consistently described two men, one taller, one shorter, the shorter one with the gun, that being the governor in Surrey, Bailey, jumping over counters, moving very spryly, and described his age as maybe somewhere between 25 and 40 years old. Now, Bailey is 68 years old. So that creates a really big problem right at the outset. This man does not match the descriptions, consistent descriptions of all eyewitnesses. What case would you point us to that comes closest to your client's situation? Because it seems that some of the cases that you cite in your brief, Paguio, Marsh, involve situations where the evidence introduced was far more prejudicial than that that we have here. I'm sorry, far more? Prejudicial to the defendant. Well, any time a detective identifies and opines essentially as to the man's guilt, that is prejudicial. Now, add to it that the whole intro to Detective Marsden's testimony was that he was a member of the LAPD robbery homicide squad, which is the elite division, the creme de la creme, the unit with the most resources that does the most important cases. So when he's adding his opinion that based on his review of the evidence, he believes that Dorsey and Bailey are the men in those videos, that opinion holds more sway than just some Joe Smollett there saying, yeah, I looked at it. And, you know, maybe sway the jury as to giving his opinion more weight than juror number five or juror number seven, because this is Detective Marsden. I guess it's not just Detective Marsden, Ideen, Bailey and Dorsey. There's still at least the appearance of a comparison and, yes, a reference to they are the defendants as opposed to those shoes seem to be similar. But I think most of the testimony is comparative rather than him saying the man in the video is Dorsey. That comes up in the context of a comparison, right, of other evidence before the jury. That's true. I mean, when he's comparing shoes, he's saying the men in the video are wearing shoes and this is the same shoe that we see Dorsey wearing. You know, you might say, well, so what? I mean, the jury can look at that for themselves. But in context, it becomes more prejudicial because I asked the court to look at those photos themselves. They're not really. There's nothing very distinctive about that shoe. They would say, oh, yeah, you know, that's obviously the same shoe. They're blurry. You see a black top sneaker with a white sole. And to say that's the same shoe, I'm not sure the jury would have come to that conclusion on their own. But when you have Detective Morrison saying that, who's part of this investigation, and who knows, maybe knows something given the resources of robbery homicide that the jury doesn't know, certainly it's not beyond the realm of possibility that they could believe that his opinion on that is entitled to more weight. And that's the whole problem here is that the whole rationale between the rule is it's not admissible if it's not helpful. It's not helpful if he adds nothing more than the jury could do on their own. So he didn't need to compare those shoes. That was for the jury to do. He didn't need to say that Dorsey was the taller man. That was the jury to determine. He could have presented the evidence just as it was without offering any of those opinions that that's the same shoe. And yet at the end of the day, it seems to me that those opinions were a pretty small portion of his testimony, which might bring this case closer to Rodriguez where we found harmless error when the majority of the testimony was admissible. The vast majority of the testimony was admissible, but it were the opinions that were worried about, the opinions that caused the prejudice, the opinions that could well have swayed this case given the other weaknesses in it. There's two different types of opinion comments. One is to have one photo here and one photo there and for him to say, in the course of my investigation, I looked at those and I thought they were similar, and therefore I proceeded down this line of inquiry. And then there's, that's Dorsey in that picture. Now that latter one is clearly improper and the district court, when it was objected to, when those were made, shut that down and said it's not to be considered. But why is the other category of opinion testimony invalid? Because that wasn't his comparison to make before the jury. We know he did that and we know that's why, and in any case, the police develop leads or evidence that lead them to suspect someone and pursue a certain investigation. And that brings the case. of the investigation that he's trying to, would be incoherent if he's not able to make some links in how the investigation proceeded. It's obvious that they focused on him. I don't think there's any reason that made the course of the investigation relevant. You didn't need to add any of that to tell a story for the government to put on its evidence. The government could put on its evidence. We didn't really need to know about the investigation. That was, in the course of offering his opinion on that as explaining the investigation, it just means that government had another witness to tie it all together to give their point of view on the case, to make a closing argument, in a sense, tying it all together. And they had Detective Marston doing that under the guise of explaining the investigation, which was not really relevant. There was no probable cause issue. No one was claiming that they got the wrong guy or they didn't have reason to suspect him. Plainly, here's the evidence, jury. You decide. I think he wanted to save some time for rebuttal. Okay. All right. Thank you. We'll hear now from Ms. Bahadu. Did I pronounce that correctly? Yes, Your Honor. Thank you. You may proceed. Good morning, Your Honors. May it please the Court. Saria Bahadu on behalf of the United States. So I will also focus on the lay opinion testimony issue, and I'm happy to answer any questions about the L.A. Times article issue after that. So, Judge Collins, I think you pointed out exactly what I was going to say, which is what we have here is we have narration being done of a category of evidence, which is the robbery footage, and the defense, at least in their reply brief, did not dispute that that was permissible. And this is at the reply brief at page 6. Marsden's testimony came from his narration and identification of the details in the videos and photographs of the robbers. No problem there. We also have narration of surveillance footage of Dorsey walking into a gas station to pay for gas, as well as surveillance footage of Dorsey and Bailey at the Hollywood Tow, which is an impound lot. Again, in the reply brief, there's no dispute with that narration either. Do you view, I mean, as I said, I think there's three categories here. There's sort of identifying the features, and then there's saying two features are the same, and then there's saying that that means it's Dorsey. There's sort of three things. Do you view this comment in the reply brief as conceding both of the first two categories or just the first category? I think it's conceding. I don't think that they're conceding the comparison. I think their view is that the comparison is impermissible, and our view is that the comparison is permissible. They're objecting to both the comparison and the identification. It sounds like that's what they're doing, but in our view this is having narration done one at a time and then it being done side by side. And if this court is comfortable in its cases Taraba-Mendia and Mbege with doing narration, we don't see how it's not permissible for what this detective did here because what he's doing is narrating a set of videos, which is evidence that the jury does not have, because Detective Marsden was able to narrate these videos after doing a frame-by-frame review. And I do have examples for the court where it's very evident that this took quite some time, and this is at 4 ER 726-27 where Detective Marsden explains just how difficult it was to see whether the shorter robber, who was later identified as Bailey, was missing a ring finger. And it was not until he used where he slowed it down and went frame by frame where he was able to see that. Doesn't Detective Marsden in his testimony, he identified the defendants by name several times, so why doesn't that cross the line from just describing footage to actually giving identification? So I think there's the one stray reference, and I do want to just correct that as well. There's one stray reference where he was asked about the type of clothing the robbers were wearing, and that's at 4 ER 719, and the answer was Defendant Dorsey covered it with a ski mask. And the court instructed let's disregard that and any reference to a face covering and defendant's name, and let's just ask what he observed the taller defendant wearing and the shorter defendant wearing. In terms of the other references to the name, I believe that was in the context of did you eventually identify these two individuals as the robbers, and did you eventually take steps to further cement that belief? I understand the argument at the narration phase that he's going to ferret out from all of this, and frame by frame, he's going to ferret out the relevant details. Here's the frame. This is the one where you can see that ring finger is missing. He can do that, and he can say, look, here's the frame. You can see the shoe. You can see the white line on the shoe, but does he have to then take the next step and say, oh, and here he is, you know, in a known context, and look at the shoe, and it's the same. Does he have to do that? Because that's what seems to usurp the jury's role and therefore not be helpful. Right. Well, of course, he doesn't have to do anything, but it's whether or not that's permissible, and it is permissible, at least under this court's decisions, in Taraba, Mandia, for example. In that case, this court found it was permissible for the officer to identify the make models of cars that were traveling back and forth to a location where there was alien smuggling possibly going on, and the officer also identified and linked, and this is in the opinion, linked those cars to co-conspirators. So it is permissible for an officer to not just identify those details that a casual observer might miss, but it is helpful to link those details to the evidence, because that is just evidence. That is evidence that these two individuals are the same, and it's based on a comparison, and that was the case in Taraba, Mandia, and also I would direct the court to Begay, because even there, of course, that's a video where there's a riot going on and there is a flurry of activity, but the officer was permitted in that case to draw arrows and circles around the defendants, linking the defendants to where they were in the video. But that was a case where it was a single incident, and you're kind of trying to figure out where the shoe is in one frame and where the shoe in the other. It's the comparison that's the problem. So in Taraba, Mandia, it's not entirely clear from my reading of the opinion on what basis the witness linked the two. I mean, the problem here is it does seem that the detective is, to the extent it's rationally based on the witness's perception, it is a conclusion that they are the same, rationally based on the witness's well-removed perception of the video, which he's needed for, and then these other identifying factors in photos, which he isn't. So what's the link that's in Taraba, Mandia, that you think should control this case? I think in Taraba, Mandia, the fact that it was permissible Rule 701 testimony, that the officer in that case was not only allowed to identify the certain details, but also to identify how those details mattered, the import of those details. And I believe that was both in Begay and Taraba, Mandia, that there is – it is permissible to identify the details and the import of that. The details, I think, in Taraba, Mandia were how many passengers there were, or something that – saying that these are the same shoes, where that's what connects the two, seems maybe slightly different. So two responses. In Taraba, Mandia, it was actually linking cars, and the officer did get very specific with make, model, and the type of car. So I think that's actually far more specific here. The second response, I'll say, is saying it's the same shoe is not an effective identification. We're not talking – and even as my friend said, some of these shoes were blurry. It's a black shoe, white sole, nondescript. We're not talking about any uniquely identifying piece of information here. So him saying this is the same shoe is effectively saying I reviewed this set of videos. Again, narration. There's the black shoe. I reviewed this set of videos, and here are some details. Again, narration. I see the same shoe is a shorthand way of saying this is my narration. Well, so it's saying that it was Dorsey's shoe, but that's impermissible. And when you're saying it's the same shoe and it just happens to be one that Mr. Dorsey is wearing in another photo, why isn't that a problem? We don't view it as impermissible because, again, this is not an identification. It's still that comparison. It's still just evidence. It's just pointing out those details and how those details link up in an investigation. This is not – sorry. In the ROMBA, I'm looking at it. It says the narratives helped the jury understand what they were seeing. For example, Frazier provided the length of time lapses between video clips. He pointed out unique characteristics of the vehicles, like their makes, models, and whether any body work had been done to them. That helped the jury identify the same cars in subsequent videos. I don't see that it says that he was saying that it's the same car as in the subsequent video. Am I missing something? Is that part of what was done in Turalba? What we are relying on in Turalba is the next sentence. This is at page 660. He linked the different cars to specific conspirators. Here, what Detective Dorsey did – sorry, excuse me, Defendant Dorsey, Detective Marsden, excuse me, a lot of Ds – did was link shoes that he was seeing in these videos. Well, it strikes me that the analogy there would be that there is an idea of a car in this case. And that Detective Marsden would say, we have other evidence that has linked this car. This was Dorsey's car. And now, outside this gas station, that's also Dorsey's car. That seems to be one analogy. But here, it is just his perception of looking at the shoe, which is usually something we leave to the jury. But it's a perception based on extensively reviewing these videos. It's extensively reviewing – Extensively reviewing a blurry shoe that I think you said maybe has a white line, maybe doesn't. Well, yes, but he not only reviewed for the shoe. He reviewed for the fact that Mr. Bailey was bald, that Mr. Bailey was wearing glasses, that they were wearing black hoodies in every robbery. I mean, there were 36 videos that we at least submitted to the court. Why can't the jury decide that? And I guess what – even if there's all this other evidence, shouldn't we take into account the fact that it was a mistrial with all this evidence when Detective Marsden didn't provide those narratives? So on the mistrial, I do want to point out – and I noticed this in preparing for the argument – in the first trial, Defendant Dorsey did not testify. In the second trial, he did. And if you look at the jury notes in relation to the first trial, you can see that the jury was struggling with different issues there. And one of the jury notes in that first trial was whether or not they can infer a negative inference from the lack of character or alibi evidence. And it appears that Dorsey sought to meet that jury note in the second trial where he not only testified, but he put forward several character and alibi witnesses. And so I think to Judge Thomas's point earlier about Marsh and Pagaio, it is easier in those cases where you have that hung jury analysis for harmlessness to isolate the more problematic testimony. Here, if you take a comparison of the first and second trials, they are different. There was a different presentation of evidence. There also was a different robbery in the first trial that was not charged in the second trial. And in the first trial, there were similar instances of Marsden's testimony. I'll bet it was not as the same as the second trial. But in the first trial, there was an instance where Marsden did testify about how he noticed the shorter robber missing a ring finger after reviewing the robbery footage. Plus, of course, as this Court knows, the harmless error analysis, there's more factors for the Court to consider. And it could look at the wide variety of evidence that was corroborating Marsden's testimony. That not only includes, of course, the videos itself. And I would just point the Court to the fact that the jury themselves were heeding the instructions from the trial court and asked to view the videos again. And so there was not this blind acceptance of Detective Marsden's testimony. They specifically asked to watch videos from two of the robberies. In addition to that, we have a plethora of other evidence corroborating the detective's testimony, including the fact that there was the Nissan Altima that was seen at the robbery of an Arco and that that Altima was traced back to Dorsey, that Dorsey admitted in a post-Miranda interview that he was driving that car during the robbery spree. We also have the fact that... During the time of the robbery spree. During the time of the robbery spree, yes, Your Honor. And he was also seen driving that car. You also have the fact that Dorsey was connected to the gun itself. There was ammunition that was found in a trunk of his car that the government put on testimony that that type of ammunition would fit the cowboy gun that was seen throughout the robberies. You also have the cell phone records. The cell phone records, they had similar patterns. There was no phone activity during the actual robberies. For some of the robberies, the phones pinged near the crime. For example, for the Earlemont Gas Station, which is a city, as I understand it, between Bakersfield and Fresno. And you have an example where Bailey's phone was pinging 46 miles from the Earlemont Gas Station 46 minutes after the robbery. And, of course, you also have the evidence that both of the phones were stopped and were no longer used two days after the Citibank robbery at the same time. And, of course, just the last bit, there were constant instructions on how to view Marston's testimony. The jury looked at the videos themselves, and then the government did not mention it in closing. So under that holistic harmlessness error analysis, the record provides a fair assurance that if there was any error, the jury was not substantially swayed by it. So I'm down to about a minute. If the court has questions about the L.A. Times article, I'm happy to answer them. Okay. If the government will submit on its papers and ask that the court affirm the conviction and the sentence in this case. Thank you. All right. Thank you, counsel. We'll hear rebuttal from Mr. Tanaka. On the issue of harmless error, I think it's important to put it in context in that a determination is that government bears the burden of showing it's more probable than not that the jury would have reached the same result if the evidence had not been presented. So on that burden, then the missed trial takes on added importance because it's sort of like a controlled experiment in the sense that the first trial, this evidence wasn't presented. The second trial, it wasn't. There's a conviction. Now, the government points to all this other evidence and the added fact that Dorsey testified. Well, that could be true, but most of that evidence was already in the first trial, that incriminating evidence that the government alleges. And then if you add in Dorsey's testifying, maybe it's a wash. They bear the burden.  And Judge Collins asked a question about what that meant in the reply brief, and I agree there are three categories. And the only category that I meant, and I think I did, but let's go back and look at it, to concede there is that the narration was proper. It's the comparisons and the identity that were improper. That's for the simple reason because that's jury's province. You know, our system of criminal justice, we put the evidence up and we let the jury decide. We don't put a thumb on it by having the investigating officer, the case agent, go through the narration and tell the jury what he thinks the evidence shows. That was for the jury. And I urge a reverse. All right. Thank you, counsel. Thank you, counsel, for the helpful arguments in that case. And the case of U.S. v. Dominic Dorsey is submitted for decision.
judges: COLLINS, THOMAS, JOHNSTONE